Frank F. Paal and Romana Paal v. Commissioner.
Paal v. Commissioner
Docket No. 4820-67.
United States Tax Court
T.C. Memo 1969-284; 1969 Tax Ct. Memo LEXIS 10; 28 T.C.M. (CCH) 1476; T.C.M. (RIA) 69284; December 23, 1969, Filed Frank F. Paal, pro se, 131 St. Joseph Ave., Long Beach, Calif. Michael Pargament, for the respondent. RAUM
Memorandum Findings of Fact and Opinion RAUM, Judge: The Commissioner determined deficiencies in petitioners' income tax for the years 1962 and 1963 in the amounts of $307.84 and *11 $808.26, respectively. After concessions by both parties, the only issue is whether petitioner Frank F. Paal incurred ordinary and necessary business expenses during 1962 and 1963 in excess of the amounts allowed by the Commissioner. Some of the facts are stipulated and are incorporated herein by this reference. Petitioners Frank F. and Romana M. Paal, husband and wife, resided at 131 St. Joseph Avenue, Long Beach, California, during the years 1962 and 1963 and at the time the petitioner herein was filed. Petitioners filed a joint Federal income tax return for the taxable year 1962 on the cash method of accounting with the district director of internal revenue, Los Angeles, California. At a subsequent time petitioners amended their 1962 return by filing an amended joint Federal income tax return for the taxable year 1962. The petitioners filed separate Federal income tax returns for the taxable year 1963 on the cash method of accounting with the district director of internal revenue, Los Angeles, California. The petitioners divided their 1963 income on an earned income basis. Subsequent thereto petitioners amended the above 1963 returns by filing an amended joint Federal income *12 tax return for the taxable year 1963. Frank F. Paal will sometimes hereinafter be referred to as petitioner or "Paal" herein. Petitioner, a native of Hungary, was about 27 years old in 1957 when he left that country for Canada. He had completed a course of instruction at the motion picture academy in Hungary. Between the years 1957 and 1960 he lived in Montreal, Canada, where he attended McGill University. He received a degree in electronics engineering from McGill, and entered the United States in September 1960. He entered Stanford University at Palo Alto, California, in September 1960 to undertake graduate studies in motion pictures. He received a Master of Arts in Communication from Stanford in June 1963. In December 1961, he had moved to Long Beach, California. During the years 1962 and 1963 Paal held several jobs as an engineer. During 1962, he worked for North American Aviation in Long Beach for the period of February to April, and during October and November of that year he worked for Amalco Corporation in Hawthorne. During 1963 Paal worked at Hoffman Electronics in El Monte 1477 from January through April and at Engineering Electronics in Hawthorne during August. In *13 September of 1963 Paal became an instructor in electronics at Compton College where he worked "continuously" until 1968. During 1962 and 1963 Paal attended evening classes at UCLA in Westwood. These classes met two or three evenings per week. Also during 1962 and 1963 Paal was engaged in the business of writing, producing, and directing motion pictures. During 1962 and 1963 Paal produced two black and white motion pictures, each of ten minutes' length, entitled "Please Push the Button" and "The Cask Amontillado." He did not own or lease any motion picture studio. The films were generally produced in public places, such as streets, etc., or in houses or buildings that were made available without charge. The period of time devoted to the production of each picture, from the first story conference to the completion of the film editing, was approximately four to six months. Paal did not directly compensate the actors and crew members ("participants") in his production, as it was agreed that they would be paid when and if the pictures were sold or commercially shown. They were generally young persons, in their early twenties, and were willing to contribute their services without pay, *14 with the understanding, however, that they would share in the profits if the pictures were successful. Paal did, however, provide some meals for the film participants during the production periods. Approximately 20 to 30 different persons were involved from time to time in the production of Paal's films or the writing of his scripts. Most of these persons worked for only a two-week period at the time of the filming of each picture. During 1962 and 1963 Paal also wrote two full length motion pictures and two television scripts. He was unable to sell any of his finished films or scripts, and he received no gross income whatever from his activities of writing, producing, or directing in connection with either motion pictures or television. Petitioner made frequent trips to Hollywood in order to discuss his work with script consultants and to make the necessary arrangements for the production of his films. He made some of these trips from his home in Long Beach, which was approximately 40 miles from Hollywood. At other times he traveled to Hollywood from his places of work or from the UCLA campus in Westwood. Paal devoted one room in his house in Long Beach to his motion picture *15 activities. In this room he had a "movieola" and a film editing machine and he used the room for his writing and editing of films and scripts. It is in connection with Paal's activities as a writer and producer of motion pictures that the controversy herein arises. Petitioner claims to have incurred expenses pursuant to these activities which, he contends, are deductible as ordinary and necessary business expenses. In their joint amended returns for the year 1962 the petitioners claimed business expenses totaling $2,829. In his separate return for the year 1963 the petitioner claimed business expense deductions totaling $3,043.89. In their Amended Petition the petitioners claimed deductions for business expenses for the years 1962 and 1963 in the amounts of $2,829 and $4,714, respectively. The Commissioner concedes that Paal was engaged in the trade or business of writing and producing motion pictures during the years in issue, but argues that petitioner has not adequately corroborated the expenditure of all the amounts claimed as business expenses. After concessions by both parties, the only expenditures now in dispute are as follows: *10 1962
Item
Amount ClaimedbyPeti- tioner
Amount Allowedby Commis- sioner
(1) Labor
$ 152.00
(2) Transportation
768.00
$600.00
(3) Lunch & Dinner (Payments in Kind)
1,040.00
(4) Parties
139.00
(5) Telephone
136.00
(6) Mail
64.00
(7) Presents
62.00
*16 *10 1963
Item
Amount ClaimedbyPeti- tioner
Amount Allowedby Commis- sioner
(1) Labor
$ 68.00
(2) Transportation
2,360.00
$600.00
(3) Lunch & Dinner (Payment in Kind)
1,248.00
8.75
(4) Parties
195.00
(5) Telephone
78.00
8.10
(6) Mail
36.00
(7) Presents
45.00
Whether these expenses were actually incurred by petitioner or whether, if incurred, they were proximately related to petitioner's business so as to be deductible, are factual 1478 questions. The burden of proof is upon petitioners, Welch v. Helvering, 290 U.S. 111, and whether this burden has been met will depend upon an examination of the evidence in respect of each deduction here in issue. 1. Labor Petitioner claims that the expenses referred to as "Labor" expenses were amounts paid to a professional typist during 1962 and 1963 for the preparation of scripts and manuscripts, not only those used in Paal's own productions, but also those which were sent to various agents and motion picture and television companies. Though Paal did not produce written documentation of these expenditures, he did produce some of the manuscripts prepared by the typist. While the matter *17 is not entirely free from doubt, we accept petitioner's testimony that such expenditures in the amounts shown were in fact made and we find that they were sufficiently connected with petitioner's business so as to be deductible. 2. Transportation Petitioner claims deductions for the mileage driven between his home in Long Beach and Hollywood in connection with his script writing and motion picture production activities. In his amended joint returns he claims deductions of $768 for 1962 and $2,360 for 1963. Such deductions are based on his contention that his trips between Long Beach and Hollywood had the total mileage of 7,680 miles in 1962 and 23,600 miles in 1963. In his brief, however, petitioner modified his mileage claim for 1963 by deducting from the 23,600 miles originally claimed the mileage allowed by the Commissioner in respect of his attendance of classes at UCLA. He also concedes that during January through April, August, and September 15 through December 31, 1963, he traveled to Hollywood directly from his places of work and that, accordingly, the distance between his home and such places of employment should not be deductible. Thus, he now seeks a deduction of $1,401 *18 for 1963 in respect of the 14,014 miles he claims to have driven after the above reductions in his mileage. The Commissioner has allowed a deduction of $600 for each year in issue. The only issue with respect to petitioner's claimed travel deductions is whether he in fact made all the trips claimed. He takes the position that he made at least 96 round trips from his home in Long Beach during 1962 and approximately 234 such trips during 1963. Petitioner attempted to justify his travel deductions by submitting diaries showing the dates of each trip to Hollywood. These diaries, however, were admittedly compiled in 1968, five to six years after the alleged trips. The diaries were allegedly based upon notes made by petitioner at the time of his various trips. The entries in the diaries, however, do not correspond to the entries in the alleged underlying notes. The notes, which are penciled in on several loose cardboard sheets, are by and large unclear and it is impossible to place much confidence on the so-called record sheets is much smaller than the number of trips indicated by the diary. Rather than supporting the alleged diary records of petitioner's trips, the underlying data suggest *19 that petitioner greatly exaggerated the extent of his business related travels to Hollywood. In light of the record as a whole we are not convinced by the "documentation" or testimony presented that petitioner made the number of business trips claimed. We think that the Commissioner's determination that petitioner's travel deductions be limited to $600 for each year is reasonable and should be sustained. 3. Lunch and Dinner (Payment in Kind) Petitioner claims that while he was engaged in the production of his two motion pictures he provided his associates (actors, cameramen, etc.) with simple meals as a form of compensation. Petitioner testified that he was unable to pay the actors and crew members at the time the movies were made and that it was understood that he would provide meals during the production period. Such meals, he testified, were usually only hamburgers and potato chips. Petitioner seeks to justify his deductions of $1,040 for 1962 and $1,248 for 1963 on the basis of entries in the diaries discussed with respect to travel expenses. Again, we can place no confidence in these diaries. Further, the so-called underlying notes do not appear to correspond to the entries *20 in the diaries either as to dates or amounts. Despite the lack of such documentary evidence, we nonetheless believe that petitioner did spend some amounts for food for his actors and crews. On the basis of the testimony before 1479 us as to the type of meals provided and the extent of petitioner's activities, we find that a reasonable allowance for this item is $400 per year. Cf. Cohan v. Commissioner, 39 F. 2d 540, 544 (C.A. 2). 4. Parties Petitioner held parties in his home on August 25, 1962 and August 25, 1963. These parties were in fact petitioner's own birthday parties. Each party was attended by 20 to 30 of Paal's friends in the motion picture industry. Though petitioner claimed that business was generally discussed among those in attendance, we doubt that the purpose or nature of these parties was other than personal entertainment. Deductions for such expenditures are specifically disallowed under the terms of sections 274(a)(1)(A) [1] and 274(d)(2). [2]
*21 Likewise, the expenses incurred by petitioner in holding New Year's Eve parties at his home on December 31, 1962 and 1963 should be disallowed. 5. Telephone Petitioner claims to have made numerous toll calls from his home in Long Beach to various individuals in Hollywood in connection with his film work. He kept no record of these calls and the amounts shown were admittedly estimates. However, notwithstanding the unsatisfactory nature of the record, we find petitioner's testimony credible on the whole in respect of this item, and we find as a fact that he actually made the phone calls claimed. The amounts appear to be reasonable and are deductible. 6. Mail Petitioner claims to have expended $64 in 1962 and $36 in 1963 for mailing scripts to various film companies in the hope that he might sell his films and scripts. In light of the number of projects engaged in by petitioner as well as the number of rejection letters received by him we find that these amounts were in fact expended for this purpose and that they are deductible as ordinary and necessary business expenses. 7. Presents Petitioner claims to have made gifts to his female productions assistants during the *22 years in issue. These gifts were said to be scarves which cost approximately $9 each. Petitioner offered no substantiation for such gifts. The names of those receiving the gifts was not presented and, in any event, the business purpose of such gifts was not established. Section 274(d)(3). Petitioners have not carried their burden of proof in respect of this item, and the Commissioner's refusal to allow any deduction therefor must be approved. Decision will be entered under Rule 50. Footnotes
1. SEC. 274. DISALLOWANCE OF CERTAIN ENTERTAINMENT, ETC., EXPENSES. (a) Entertainment, Amusement, or Recreation. - (1) In general. - No deduction otherwise allowable under this chapter shall be allowed for any item - (A) Activity. - With respect to an activity which is of a type generally considered to constitute entertainment, amusement, or recreation, unless the taxpayer establishes that the item was directly related to, or, in the case of an item directly preceding or following a substantial and bona fide business discussion (including business meetings at a convention or otherwise), that such item was associated with, the active conduct of the taxpayer's trade or business, * * * ↩
2. SEC. 274. DISALLOWANCE OF CERTAIN ENTERTAINMENT, ETC., EXPENSES. * * * (d) Substantiation Required. - No deduction shall be allowed - * * * (2) for any item with respect to any activity which is of a type generally considered to constitute entertainment, amusement, or recreation, or with respect to a facility used in connection with such an activity, * * *↩